All right, Mr. Steve, whenever you're ready. Good morning. May it please the court. My name is Jason Steed. I represent the appellant Brenda Ware in this case. This case is about the Federal District Court's jurisdiction to expunge criminal records. And I want to start out by making a couple of points. Well, I can start there, Your Honor. As this court decided in the Holland case, which we cited in our reply, not every motion or proceeding in a criminal case is criminal in nature. And so, for example, this is not the example in the Holland case, but for example, you might have a motion to quash a subpoena or something like that in a criminal case that would be a civil proceeding. It's about a private harm that's maybe being caused by the subpoena. That is not a criminal matter in an effort to quash that subpoena. In the Holland case, it was a post-judgment. The defendants in that case had been acquitted. They brought a post-judgment motion for attorney's fees under, I think it's the Hayes or Haines amendment or something like that. And the court said they filed that motion for attorney's fees. We talk of it as the underlying criminal case, and the court said not every motion or proceeding in a criminal case is criminal in nature. And the way that that's determined is by what's at issue. If it's a private harm that's being addressed, then it's most likely a civil matter. If it's about guilt and punishment, then it's criminal in nature. The way that the Ninth Circuit addressed this same question in the Ono and Yacoub cases, which we cited, they talk about – Give me that distinction again. You may mean or the motion is addressing a private harm, then it's civil in nature. If it's addressing guilt and punishment, or as the Ninth Circuit puts it, if it's a step in the criminal case, then it would be criminal in nature. And how do you fit this situation into one or the other? Well, the motion – so in Holland, it was a post-judgment motion for attorney's fees. The Garcia case is another one from this court that we cited where the court said that a post-conviction motion to recover property is a civil matter. In this case, a post-conviction motion to expunge the criminal record is addressing the private harm that's being caused by the continuing availability of that record. The harm that's being – To the defendant. To the defendant, years later, who's coming, asking the court to expunge that record to essentially relieve the individual of the harm that's being caused by the availability of that record. That's a private harm. It's not about guilt or punishment. It's not a wrong over at this point. There's been a conviction, there's been a sentence, the sentence has been served, 15 years have gone by. There's no step in the criminal case to be taken. This is a private harm. In fact, there are motions to expunge in civil cases. A motion to expunge the record in an administrative proceeding, for example. Those – you can find cases dealing with expungement of a record in those cases. Expungement itself is not criminal. It's not dealing with the criminal conviction itself. It's dealing with the fact that as a civil matter, the appeal – Let me ask you this. You seek an expungement. That's what you're arguing for. I'm going to talk to you in a minute. I don't think your client asked for that. Tell me what you say expungement is. What is expungement? Expungement can be either the – No, no, can be what you argue it is. What relief do you argue for in this case? We're asking for expungement, which the court may decide – What do you say expungement is? Tell me what you want. What is expungement? Restricting the access to the criminal record. Sealing? It may be sealing or it may be actually destroying. That's what the court said. Let me ask then, does your client want the records destroyed in this case? Assuming she asked for expungement, which she clearly did not. But if she were asking for expungement, we're really out on a hypothetical limb now. You arguing for her, what is expungement that she wants in this case? I think that it's clear from her pro se letter to the court, which was construed as a motion, it's clear that she didn't want expungement, understanding expungement as destruction. She was distinguishing between expungement and sealing. That's what she asked for. Yes. So why are we talking about expungement? Because as a pro se litigant, she didn't understand expungement can also mean sealing the record. But she understood perfectly that. She said, I am not requesting the expungement of the criminal record, but to seal the record. You just said that's what she wants. She wants sealing the record. Yes, because the distinction. Stop, stop. Why isn't what she said perfectly clear? Your Honor, I don't want expungement, whatever people may say that is. I want my record sealed. Your argument that it can be both, it seems to me it's not even relevant. She asked for sealing, didn't she? And you argue that's what she wants in this case. She is asking for her record, for restriction of the access to the criminal record. She asked for sealing, didn't she? Yes. And haven't you argued that expungement can be sealing? Yes. Expungement can be something else, can it? Yes. She looks like she knows the difference, doesn't she? She understands the difference between expungement and sealing to be destruction and sealing. Right. And she's trying to tell the court, I'm not asking you to destroy the record. Whatever name you put on it, she's asking for sealing of her records, right? Yes. I know we're doing it because the judge reached out to it to talk about expungement, but you don't appeal anything on sealing. No, because the tests are different. Well, I know the test is different. What's in front of us may be different, too. I don't understand. This is how the case is framed up. I know we've gotten beyond, quite frankly, the district court, I think trying to just cover bases, seemed to make a decision on her rights that she did not ask for. She didn't ask the court to make any decision on expungement as contrasted with sealing. She knew what she wanted. She wanted it sealed. He ruled on that. It hadn't been appealed. So I don't even know why we're talking about expungement. Your Honor, it's an extremely common occurrence that a pro se litigant thinks they're asking for something. Not this one. Not this one. Look what she said. She says, I am not requesting expungement, but to seal. Your Honor, Black's Law Dictionary defines expungement as either the destruction or the sealing of records. I know that, but shouldn't... She didn't understand that. She didn't understand that expungement could also mean sealing. But it doesn't matter to her. She didn't want... Listen, now think about your argument. Your argument is expungement can mean sealing, or it can mean destruction. She didn't want destruction, does she? No. She wants the other thing that you argue for, which is sealing. Yes. So why don't you appeal sealing? Because what sealing means in the context of a motion to seal is different from what sealing means in a motion to expunge. What is... The effect is the same. We're asking the court to restrict access to the record, and in a motion to seal, typically, that's what the court... So why didn't you appeal the sealing determination and say that that is the wrong determination? Because we're not arguing whether the decision on sealing in the context of a motion to seal is right or wrong because they applied the wrong test. That's not the test. This is a motion to expunge, and the court rightly... It's a common occurrence that this happens. These motions are almost always pro se. The court frequently... The district court will frequently construe it as a motion to expunge properly. I know that. That seems to me to make perfect sense. If a pro se person writes and goes, Judge, would you seal my record? Then I think it's a good argument to say, and I think we would construe it liberally and look at it and go, you know, even if this is a motion to start with. But at any rate, we would go, she says seal, but she doesn't understand the distinction between seal and expungement. We have to explore all that. That's not what this pro se person did. This pro se person said, I want to seal it in contradistinction to expungement. I do not want expungement. So it strikes me the only reasonable way to read her letter is expungement, whatever that means, destroying... I don't want anything to do with that, Your Honor. I want you just to seal my record. And by the way, let me say, it makes perfect sense that she would do that. She just wants her record sealed, thinks probably more likely to get that than to have him do something else to the record. But how do we, considering the general rule that we construe it liberally, but we don't presume this woman is ignorant or can't express what she wants, and she expressed it pretty clearly, didn't she? She asked for the court to seal her record, yes. And said she didn't want expungement. As Your Honor said, she probably understood that it was going to be harder to get the court to destroy her record than to just seal it. What she didn't understand is that expungement doesn't necessarily require the destruction of a record. It would be the opposite of construing the pleading liberally to deny her motion because she didn't understand the nature of expungement and the difference between expungement and sealing. Well, how do we know she didn't understand it? Because it's implicit in her distinction that she's asking for one and not the other when in every other case that someone brings a motion like this, the courts rightly construe it as a motion to expunge just as this district court did here. The district court understood she was seeking to expunge the record because the context of the motion is the context of expungement, not sealing, and the tests are different. So the court addressed sealing because that's what she asked for, but actually moved through it quite quickly because the test for sealing doesn't really apply. The test for sealing is about ongoing litigation and concerns about ongoing investigations sometimes in a criminal trial. So you would have a court read a motion. Let me give you two different letters. Your Honor, I am not requesting the expungement of the criminal record, but to seal my record. You would read that the same as, Your Honor, I am requesting the expungement of my record or sealing my record. To you, that's read exactly the same way. In this case, yes. In any case, like this. He's asking the court to seal. No, no, no. I'm saying that's how you would read it in any case, in every case. In a case where the context is that she's seeking expungement, that's what the context indicates? She's not seeking it. The context doesn't indicate she's seeking expungement. Your Honor, she's asking to seal the record. Right. Expungement includes sealing the record. In a context where it's years, this is 15 years later. Listen to me now. If you seal the records, which is, you know, when you have a process of sealing a record, you normally have to do it publicly and all that, the normal. People know what that means. That means that the general public can't get to that unless there's some good reason that the court says. That would achieve what she wanted, wouldn't it? Yes. That's what she's asking. Just the sealing. Just the sealing. No expungement. Yes. That's what she's asking for is sealing the record. Okay. But in the context she's asking for it, it's properly construed as expungement because a motion to seal is usually brought either before or during litigation. And the test for a motion to seal in that context is different from a motion to expunge a record, which can include sealing, which is what she's seeking. But a motion for expungement is brought years later, sometimes decades later. You can't file a motion to seal years later? You probably could. But probably not in a criminal case. In a criminal case, it's a motion to expunge a record. In commercial litigation, they might file a motion to seal years later, I suppose, if they wanted to cover up a record of something and had good reason to. Do you think the court has authority to seal a criminal record years later? That is a motion to expunge. That is what expungement does. Wait a second. Now, no. But expungement only read as sealing. Look, you make the distinction in expungement that we make this distinction. It's either sealing so nobody can get it but the documents stay as they are or expungement as destruction, right? Expungement can be either. Right. It can be read either way. Right. Are you saying that a person can't make a motion to seal, not destroy, just to seal years later in a criminal case? They could, but the courts construe that motion to expunge. Rightly so because that's what expungement is about. It's about sealing or destroying a record from a criminal case that is usually. That makes no logical sense to me. What do you mean? Why do they naturally construe it as a motion to expunge? Why couldn't it be construed by what a person says? Your Honor, I want to seal it. I don't want any destruction. I want it sealed. I don't want expunge. I don't want anybody to know I ever asked for expungement. That's not what I want, Your Honor. I'm asking for a motion to seal it. Why couldn't a person do that 30 years after the fact? Your Honor, with respect, the way that you're framing that is drawing a hard distinction between sealing and expungement. Why couldn't a person do that? Because there isn't one. There isn't a hard distinction between them. There's a difference in the test. There's a difference between expungement as destruction and expungement as sealing. Why wouldn't the court then say, I'm just looking at sealing the record, not any kind of destruction? If the court is going to say, I'm looking at expungement as sealing and not destruction, that's fine. That's what they do. A pro se litigant brings a motion to seal, and the court construes that as a motion to expunge, understanding that they're just going to seal the record. That's what they do all the time. And it's called a motion to expunge in this context. And all you seek here is the sealing. Sure. If you have the remedy you want here, it won't be destruction of anything. It does not need to be the destruction of anything. No, I'm just asking the relief you're seeking. She is asking the court to restrict access to her criminal record, which can be sealing. That's what she's asked for. She hasn't asked the court to destroy the record. But it is properly construed as a motion to expunge because the test that applies is different. Okay. I understand. What remedy you would like here is for the record to be sealed, the record to be there, just be sealed that people cannot see any of the record unless there's some subsequent court order. Right. Counsel, if we talk about ancillary jurisdiction, is there any court of appeals post the U.S. Supreme Court test for ancillary jurisdiction that has specifically considered that and found that the court has jurisdiction with regard to expungement? There are cases from circuit courts. The Fifth, Sixth, and Seventh Circuits have all continued to recognize the jurisdiction of the district court to expunge criminal records on equitable grounds. They haven't dealt with Kokanen, the Supreme Court decision, but there's good reason, and I'm running out of time on my coping army. Sure. Okay. The reason that they haven't necessarily addressed Kokanen is that Kokanen is about ancillary jurisdiction, but these circuits, and including this circuit, have recognized the jurisdiction as inherent equitable jurisdiction to expunge criminal records. If the jurisdiction, as this court has said in the Webster case, if the jurisdiction is inherent equitable jurisdiction to expunge criminal records, there isn't necessarily any reason to address Kokanen, which is about ancillary jurisdiction. Kokanen addresses ancillary jurisdiction, and we believe that a motion to expunge criminal records falls under Kokanen and would still be proper to exercise ancillary jurisdiction under Kokanen, but we don't even necessarily have to get there if it's inherent equitable jurisdiction, and that's why some circuits have done that. I'll reserve. Okay. We've got some time reserved. Please, the court, my name is Randolph Bernard. I'm an assistant United States attorney and also the criminal chief in the Northern District of West Virginia. I won't belabor the point. Donald Kersey is in attendance. He's a third-year law student at West Virginia University College of Law, and he's appearing on behalf of the United States as part of a new program in our office under Local Rule 46A. So I don't want to belabor or use any of his time, but he will present the oral argument, and I'm also available for questions after he's done. Thank you, Mr. Bernard. All right, Mr. Kersey. Come on up. Take a deep breath. And get ready. Thank you, Your Honors. May it please the Court. I'm Donald Kersey, here from the University of West Virginia, here on behalf of the government. With regard to the issue of whether or not this is criminal or civil in nature, the government's brief is fairly clear, and if it pleases the Court, the government stands on that brief unless you have any substantive questions. Why is it criminal instead of civil? It's criminal because it is a step in the criminal case. She filed this letter motion in her criminal docket to the court in which she was tried for her criminal trial. She poses the motion as a motion to seal her criminal record. While I understand the holding in Holland is that not everything in criminal proceedings is criminal in nature, this is criminal in nature because the court in Holland states that it's basically civil if it redresses private injuries and it's basically criminal if it redresses I'm sorry, if it establishes guilt and punishes offenders. Just by nature of why we're here today, the appellant is stating that she's being punished by the mere existence of her criminal record. That is a punishment in itself, and while it is not a sentence, it is a punishment in its establishing guilt. I presume it's an unintended punishment. There's certainly nothing the law intends. We want you to have this conviction so you can't get a job. Indeed, and I guess more relevant is that it establishes guilt. It's the literal document that establishes her guilt. No, it doesn't. Not her motion does it. You don't think people get hurt and punished in civil cases? When the court says you have to pay a verdict of $44 million? I don't understand that distinction. This has nothing to do with the determination of her guilt or not guilt. Does it? I believe it does, Your Honor, because it's in her criminal appeal. What does it have to do with her being guilty? It doesn't have anything to do with her being guilty. This motion is not going to affect whether or not she's guilty, is it? No, Your Honor, it doesn't. She's guilty. Why is this motion aimed at a file of the court under the court's jurisdiction, protection, supervision? Why isn't it civil? Because it's criminal, Your Honor. That's not a good enough answer. That's not a good enough answer. That's the conclusion. Why isn't it? If you filed a motion, Your Honor, there was a very embarrassing deposition in a case I was in where I had to admit I was drinking on that night and now I'm being held up to be a deacon in my church. Would you seal that for me, please? Because I won't ever get to be a deacon if the church knows that I admitted that. Isn't that more akin to what she's asking for? I did it. I'm not claiming I didn't do it. Just I don't want everybody to be able to get to it. Why doesn't that sort of sound like civil? The way you pose it, Your Honor, it does. Well, that's what she's doing. So then you give up on that point? I do not. Okay, I don't think you should. I don't know that you should, but you have to have an argument as to why you don't. Simply put, in our brief, Your Honor, we noted that she filed this motion in regards to her criminal conviction. What else would she file it in? What else does she have in front of the court? This is a layperson, remember. That's the only case that she's had in front of the court. She should have filed it with the office of the pardon attorney, Your Honor. Now, wait a minute, wait a minute, wait a minute. This is a pro se person sending a letter to the judge, and the other side doesn't even want the poor woman to be held to the word she specifically used, and you say she should know to file with the pardon attorney? A pro se person would render that answer. Yeah, sure. The crime she was convicted of, felony, they are? Yes, Your Honor, it was wire fraud, conspiracy, and perjury. And if she later is in possession of a weapon, how would the government prove she's a felon in possession of a firearm if this record's gone? They wouldn't be able to, Your Honor. So it has purposes beyond just reflecting the verdict of the jury? That's correct. Couldn't they move to unseal? They could, Your Honor. I mean, do you think any district judge in the country would deny the government's motion to unseal for the purposes of examining her criminal record for the sole purpose of deciding that she can be charged with felony possession? No court would deny that, would it? No, I don't believe so, Your Honor. But the district court in this case ruled on the motion to seal and clearly found that she didn't satisfy the standard under which it would grant a motion to seal. Moreover, expungement in this case, whether or not it's sealing or destroying, if it's sealing expungement, then the court has ruled on the motion to seal, and I think it's fairly analogous to a motion to expunge but to seal the record, not destroy. And if it's to destroy, the court doesn't have jurisdiction. Do you agree with your opponent's explanation of expungement that it has different parts and one part is sealing and one part is destruction? Respectfully, Your Honors, no, I don't agree. What do you think expungement is? I think expungement is distinctly the destruction of the record to prevent anyone from ever seeing the record again because it doesn't exist. That's what expungement is to the government, at least. I've never heard sealing a record after expungement, but, again, I'm a third-year law student and I'm very well versed in expungements. Well, neither are we. Very well. But no, wait, I was going to ask you a question about that. What does the government say expungement is? It's destroying the record. It's erasing the record. What record? The criminal conviction, the record of the criminal conviction. The court's records or anyone in government, the FBI, everybody else? That's a good question, Your Honor. We didn't know whether or not the appellant was asking for just the district court to delete on its record. But you're missing the point. I'm sorry. We're asking what your view of expungement is. We're asking what does the government say expungement is? Expungement is the destruction of the record of her criminal conviction. What is the record? What do you mean by that? The words, Your Honor. It says she was convicted. The documents, the hard papers. And where? In the court's documents? I'm assuming, yes. I don't know how the court destroys its records on expungement. I don't know how that process works. But the relief she seeks here, even if it was to destroy… I'm not going to ask you this much. Did you anticipate you might be asked what you mean by expungement when you got up to argue the case? Of course, Your Honor. And what I mean by… And your answer to that is? The physical destruction of all record of her criminal conviction. Do you not think when you answer that question somebody would say what is the record? Perhaps, Your Honor. I didn't. But my answer to that is… My point is this. What if there was a public trial and there was a transcript? It's not always prepared, but a transcript had been prepared and filed with the court. Does that have to be destroyed? And I think, Your Honor, you're getting to the point. You can't erase all evidence. Actually, I'm asking a question. Maybe you'll get to the point, but I'm asking the question. Your question alludes to the point that you will never be able to erase all record of a criminal conviction. And Ms. Ware, what she seeks is to move up within her position working for these military installations. She can't pass this background check because of the existence of her criminal record. You talked about the pardon attorney. Does that destroy the record if somebody is granted a pardon? I don't know that that motion, even if granted, would destroy the record itself. But the pardon attorney would send, I'm assuming, would send orders to different assets of the government. I don't think it would work. I don't think it's good for you to assume. You raised the pardon attorney. Because that's what the Constitution, that's where the Constitution grants the power to expunge, to pardon to the President by way of the office of the pardon attorney. So courts have no inherent power, in your opinion, to expunge records?  No, Your Honor. Let me say, hadn't the Fourth Circuit looked with agreement on expunging criminal records? Yes, but criminal records and record of a criminal conviction, I would draw a distinction there. Criminal records could include arrest records or where a defendant was tried and acquitted. The government draws this distinction at the conviction. We don't contend that no district court should ever hear a motion to expunge an arrest that later ended in an acquittal or where someone entered a pretrial diversion program and the charges were dismissed. The government simply contends that the court doesn't have inherent equitable jurisdiction, ancillary jurisdiction, any jurisdiction, to hear a motion to expunge based solely on equitable grounds, expunge a criminal conviction, conviction on equitable grounds. Because a conviction is wholly distinct from an acquittal. But the ancillary jurisdiction analysis doesn't distinguish between convictions versus arrest records, does it? I don't think it does, Your Honor. But in this case, you're referring to the Kekkonen standard? Yes. In this case, that standard is not satisfied because the facts are independent. The facts from her initial trial in which she was convicted of wire fraud, conspiracy, and perjury are wholly independent from the facts of this motion, which is she's having a hard time passing a background check so she can work in certain military installations. They're wholly independent. The only connection there is the mere presence of the conviction. It's just the conviction. That's the only connection, and it's the government's position that that connection is not sufficient. Moreover, the second purpose in Kekkonen is not satisfied because the court would not have an interest in vindicating its authority or effectuating its decrees by overturning or, excuse me, by erasing, which is the government's definition of expungement, though the procedure is unclear. It would not have an interest in erasing the record of the conviction. That, in my opinion, ineffectuates its authority. It unvindicates its decision. Did you participate in preparing this brief? No, Your Honor. I didn't have the pleasure of doing that. It might have been such a pleasure if you had because I was going to ask if that's the point that the government raises. Did she ask for an expungement or did she ask for sealing? She asked for sealing. And my question to you, which you don't have to answer, is going to be if the government thinks that, why is it the afterthought in your brief, Section 3, and why isn't that at the first of your brief? But you don't have to answer it. I'm not going to make you answer it since I'm going to hold you responsible for something you didn't do. But I could. I'm happy to take responsibility, Your Honor. You're happy to take responsibility? I will, yes. Okay. Then why did you put it at the last point if you think that's correct? Because we didn't think this would get to the merits because we didn't think that this proceeding was civil in nature. We thought that the appellant, frankly, filed too late. No, stop. You wanted to get into it. That answer doesn't make any sense to me. So you think what's the critical point, initial critical point, you put at the end of the brief because you thought we wouldn't read the brief? No, of course not, Your Honor. So what was your answer? It was a matter of importance. We thought that the court would address this issue. You would address the jurisdictional issue first. You would get to the ancillary jurisdiction, and then you would get to the relief requested. Why wouldn't it be that we're arguing about something she didn't even want, and she doesn't even have a valid appeal because she was denied sealing, and that's all she asked for, and that was denied. Therefore, there's no basis for appeal. Why wouldn't that come first? I would have to ask the brief writer, Your Honor. Well, okay. That's why I was going to let you go, but you said you were glad to do it, so that's why I asked you. I regretfully say thank you. By the way, let me take a minute of your time and say I appreciate you as a student. You don't know this, but I teach a course at the Law School of South Carolina on Fourth Circuit practice. Is that right? And my students have to stand up in front of me and at times a three-judge panel and do just what you're doing. As fate would have it, one of my students, Marshall Crane, happened to be here today, and I see him smiling because he's been in your shoes a number of times in front of me answering the same kind of questions, but I think you're holding your own all right. Thank you, Your Honor. Bless you, Mr. Crane. Your Honor, again, the court does not – the Kokonan court, the purposes in Kokonan are not satisfied here. They wouldn't be satisfied had the court – if the court even would reach the merits because the court denied the motion to seal. So it's irrational to think that the court would have denied a motion to seal but grant a motion to expunge. What about appellant's argument that you don't even consider Kokonan because the court has inherent power? The court isn't looking to ancillary jurisdiction for its authority. Respectfully, I disagree. After Kokonan – But what do the cases say?  They're all over the place, Your Honor. Within this circuit itself, in the district courts, they find ancillary jurisdiction to hear expungement motions on arrest records, acquittals or in other extreme circumstances such as a statute was found to be unconstitutional under which someone was convicted or mass arrests, things like that. Those would be appropriate motions for expungement to hear in a district court because the district court has ancillary jurisdiction because the facts of those cases would be interrelated. So you draw a distinction between ancillary jurisdiction and authority to act? What's your definition of authority to act, Your Honor? Well, you say it the way it was. You didn't ask the question. Yes, of course. I'm sorry. I'm not sure I understand the question, but I'll clarify my point. It seems to me all those cases have to first be judged by is there jurisdiction. Right. Then if there is jurisdiction, is there authority, once we have jurisdiction, to grant relief or to act? And it seems to me those cases, sometimes the analysis of those cases and sometimes the cases lead those two concepts together. And they do, Your Honor. You're correct. So I'll clarify. The Fourth Circuit in Allen v. Webster found inherent jurisdiction. It didn't go into this large ancillary jurisdictional analysis where it found jurisdiction. It just said the court acknowledges we have historically had inherent jurisdiction to hear these cases. The distinction between the district courts – Is it inherent jurisdiction? What is that? That's a good question, Your Honor, but I wasn't here when that case was decided, and I appreciate the question, but I can't answer that either. I disagree with it. It seems to me that we're looking at a question of ancillary jurisdiction. And once jurisdiction is established, the question becomes is there perhaps inherent authority? In other words, you don't have to point to any specific rule or statute or any constitutional provision, but once jurisdiction is established, ancillary or otherwise, that has to be established. We're a court of limited jurisdiction. All federal courts are. And then if we have jurisdiction, then do we have the authority to act? And then finally, do we want to exercise that authority to act? But it seems to me, I don't know what inherent jurisdiction is. Do you know in these cases what that means? Your Honor, I don't either. No, because usually when these – in fact, the majority of the cases that do find they have inherent jurisdiction, that's their finding of jurisdiction. There's no analysis. It's just we have inherent jurisdiction. They may cite some cases like Webster, but they don't go into a large analysis explaining why. Let me just ask this question to take you back and maybe help your position on how you wrote your brief. If we were only considering the ceiling, if the district court had stopped at the ceiling and hadn't gone on to expungement, your position wouldn't be to affirm if we got to it. Yours would be to simply dismiss for lack of jurisdiction here. What would your position be? If only the court had only written on ceiling and hadn't said anything about expungement and then that came to us, would you ask us to – would you be asking us to affirm the district court's decision on its equitable authority and decision not to grant ceiling or would you argue that we don't have jurisdiction to even hear this appeal? I would ask you to affirm because I believe the Fourth Circuit found and I believe they're inherently – not inherently, expressly there is law that states that district courts may seal records. I couldn't point to the exact law, but you may seal a record. So we would ask you to affirm the court's order to deny the seal. I don't think that's the right answer for you because don't you claim it was untimely filed? Yes, of course. Yes, Your Honor. Yes. I thought we were hypothetical. Well, we are. Okay. It's about this case. The hypothetical is there's nothing about expungement in this case. Very well, Your Honor. Yes. You see what I mean? If it was just on ceiling, your argument would be the same as it is now that we don't have jurisdiction because it's all done in a criminal matter. Yes. Okay. Sure. Okay. To our third point we raised in our brief, which was whether or not the error, if error, was harmless. I think it's fairly clear from the order itself that the court would have denied a motion to expunge, whether that means seal a record or completely erase it, because the court indicated in the first footnote of the order that it's analyzing this motion to seal and the motion to expunge, and it denies both. Whether or not it's inartfully stated or not, it's pretty clear the court would have denied the motion to expunge. Second, it's illogical to think that the court would have denied a motion to seal but granted an expungement, whether that means also sealing just 20 years later or deleting completely. I just can't imagine that a district court would do such a thing. And, frankly, Your Honor, the relief that she seeks, which is to pass a background check, I don't think would be available even if the record was completely deleted, because, as Judge Shedd pointed out, you have media databases and public forums and there's all sorts of records beyond the court's records, of which it has authority, that indicate she was convicted of a crime. So more than just being able to say on an application, if the expungement was granted, on an application that I was not convicted of a felony, I don't know what else the appellant could really get in this case, even if the expungement was granted. Thank you, Your Honors, for this opportunity, and I very much appreciate it. Thank you, Mr. Kersey. Mr. Steed, you have some time to reply. Thank you, Your Honors. Inherent jurisdiction stems from Article III of the Constitution. Article III says the judicial branch, the courts will have jurisdiction over matters of law and equity. That equitable jurisdiction is in Article III. That's inherent to the courts as they are constituted. If the court has inherent equitable jurisdiction over an equitable matter, which is what this is, that's different from ancillary jurisdiction, which flows from a jurisdiction other than the inherent jurisdiction. So, for example, Kokanen was a case involving diversity jurisdiction over a contract dispute between an insurer and an insured. That diversity jurisdiction is statutorily granted for the underlying case, and then when a subsequent motion was filed to enforce a settlement agreement, the Supreme Court said that that new motion to enforce that settlement agreement was essentially a new action for breach of contract, and there wasn't ancillary jurisdiction from that original diverse jurisdiction of the underlying case to hear that subsequent motion. That's what ancillary jurisdiction is, and that's how it differs from inherent jurisdiction. The court has inherent equitable jurisdiction. This court has recognized that the district court has inherent equitable jurisdiction to hear expungement motions. The grounds on which that motion is brought or the type of record that's being expunged, those things don't govern the court's jurisdiction. Those things are about the circumstances to be considered in determining whether or not to expunge the record. The government's trying to draw a distinction between expunging a record of a conviction versus expunging a record of an acquittal or an arrest record or something like that. There is no authority for drawing that distinction until Sumner, the Ninth Circuit decision, which started this whole mess. Before Sumner, before that decision in 2000, all of the courts recognized inherent equitable jurisdiction, or some of them called it ancillary jurisdiction, which flowed from the original jurisdiction over the original criminal case. But either way, all of the circuits recognized that district courts had jurisdiction to hear expungement motions, all of them. All of the courts still recognize to this day, there's no dispute, all of the circuits recognize district courts have jurisdiction to hear expungement motions. The only disagreement here is over a particular kind of expungement motion dealing with a particular kind of record. Are you looking to Webster for your assertion that this court has recognized the authority to grant expungement motions? Yes, Webster says that. What was the jurisdictional basis in Webster? I couldn't find it. I couldn't find it. It refers to the district court's equitable discretion to expunge records. Yeah, but that's a different jurisdiction maybe even than ours. What was the jurisdictional basis of the Fourth Circuit? It's not clear in the case, is it? Do you mean the Fourth Circuit's jurisdiction to hear the appeal? Well, this court's jurisdiction. And general jurisdiction. That wasn't at play in Webster, was it? They assumed it, didn't they? This court's jurisdiction to hear the appeal was not at issue in Webster. But federal court jurisdiction, that wasn't discussed in Webster, was it? Not at length. This court simply recognized that the district court had equitable discretion and didn't abuse that discretion when it denied the motion to expunge. It seemed to me, I'm just saying, I'll let you go on. It seemed to me Webster operated on sort of assumed jurisdiction. Just assumed. That's true. Not that it's proper or not. I mean, it just seemed to me they just assumed it. That's true. All of the circuits, many of the circuits basically assumed it. For 200 plus years, all of the courts have recognized that this equitable jurisdiction existed. The Supreme Court, I think we cited its Northwestern Fuel 1890-something case, I think, where the Supreme Court talked about the district court's jurisdiction to correct injuries that are the consequence of the court's own judgment. The Supreme Court, in the Nixon case that we cited, says the district court has inherent supervisory power over its records. The district court either has jurisdiction to expunge or it doesn't. And drawing the line between certain kinds of motions or certain kinds of records, that goes to the merits of the request, not the district court's power to hear the request and decide it. That's the mistake that the Ninth Circuit made in Sumner, which has created this circuit split dealing with Coconin. Coconin was decided in 1994. For six years it sat there and no court thought that it had any application to expunging criminal records. It wasn't until Sumner, the Sumner decision, the Ninth Circuit reached out and grabbed Coconin and said, this means we don't have jurisdiction over this particular kind of motion. And even in Sumner, while the Ninth Circuit is saying that, it's recognizing that the court still has jurisdiction to hear other expungement motions. Again, the court either has the jurisdiction to restrict access to records or it doesn't. And regarding sealing and expungement, what's at issue here is the court's jurisdiction to restrict access to records. Yes, Ms. Ware said sealing, not expungement. But to hold a pro se litigant to the literal words she uses and disregard all the cases in which we regularly construe this as expungement would be the opposite of liberally construing her pleading. The error here, if the court only addressed sealing and didn't address expungement, then we would appeal saying the court erred by applying the wrong test. It should have construed this as expungement and applied the proper test for expungement. Because the interests that are being weighed are different in a motion to seal versus a motion to expunge.  I don't understand how construing pleadings liberally by pro se means you disregard what she says when she says, I don't want this. Because you might have a pro se litigant who doesn't understand what they're actually pleading. The facts that they plead, they might say, I'm not asking for this, but I'm asking for this. But clearly the facts that they're pleading and what they're asking for, the court knows better than to say, well, you didn't ask for that, even though all of your facts and the belief you're seeking. But she asked for exactly what she wanted. Yes, which is to seal the records. Right. Which falls under expungement. And the government takes the position that expungement means only destruction of the records. That's contrary to all the case law, to all the treatises that talk about expunging records. It's contrary to Black's Law Dictionary, which defines expungement as sealing or destroying records. She's asking for sealing. That falls under expungement. The district court, in many cases, construes a motion to seal as a motion to expunge. Is there any statute of limitations on a motion to expunge? No. She could file it again if she wants to. It's equitable relief. She could file it again tomorrow if she wanted to, if she wants to expunge. If circumstances change and the court— Why do circumstances have to change? Well, if nothing's changed and the court's already ruled, then there might not be any basis for seeking that equitable relief. You might think there is. Sure. Nothing prevents her from filing it. She's probably not going to— Is there a statute of limitations? Is there a res judicata on expungement orders? I don't think in an equitable situation, I don't think you can have— Latches or anything like that? What's that? Latches or anything like that? In other words, is a person entitled, under your view, to file as many expungement motions as they care to? I'm not aware of authorities saying they can't is the best answer I can give to that. So your view, though, is why you practice in this area. I'm trying to find, I don't know, maybe a court order over limitations on filings, but other than that, I don't know anything inherent in the theory of expungement that would limit filings. Do you? I don't know of anything, no. Because five years later, circumstances may change. But even if circumstances don't change, it just might not be successful. Absolutely. I'm done. Over my time. Are there any other questions? No, thank you. Thank you. We'll come down and re-counsel and then take about a five or ten minute break. This honorable court will take a brief recess.
judges: William B. Traxler, Jr., Dennis W. Shedd, Elizabeth Kay Dillon